UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
GEOVANY FLORES HERNANDEZ,

Petitioner,

- against -

**MEMORANDUM & ORDER**
26-CV-4770 (PKC)

MARKWAYNE MULLIN, *in his official capacity as Secretary of the Department of Homeland Security*, *et al.*,

Respondents.
---------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

On August 5, 2026, Petitioner Geovany Flores Hernandez filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Section 2241"). (Pet., Dkt. 1.) For the following reasons, the Petition is GRANTED. Respondents are ordered to release Petitioner immediately and no later than 6:00 p.m. ET on August 22, 2026.

## BACKGROUND

### A. Factual Background[1]

Petitioner Geovany Flores Hernandez is a citizen of El Salvador and has lived in Long Island, New York since 2001. (*Id.* ¶ 15.) Petitioner and his wife have three children and two grandchildren, all of whom are American citizens. (*Id.* ¶ 21.) He runs a successful landscaping business, and he has paid taxes in the United States since 2005. (*Id.* ¶ 22.) Petitioner has a pending Form I-485, Application to Register Permanent Residence or Adjust Status, under review with the United States Citizenship and Immigration Services ("USCIS"). (Form I-213 Record of

[1] The Court's understanding of the facts is grounded in the Petition, the government's response to the Court's Order to Show Cause, and the attached exhibits.

Deportable/Inadmissible Alien ("Form I-213"), Dkt. 6-13, at 4.) On August 4, 2026, Petitioner was arrested and detained by Immigration and Customs Enforcement ("ICE"). (Pet., Dkt. 1, ¶¶ 26–32.)

1. Petitioner's Previous Immigration Proceedings

In May 2001, United States Border Patrol stopped Petitioner near Douglas, Arizona. Petitioner claimed to be a Mexican national and was granted voluntary return to Mexico. He returned to Mexico that same day. Petitioner entered the United States again thereafter at an unknown time and place. (*See* Resp. O.S.C. ("Resp."), Dkt. 6, at 2; Decl. Officer Demetrios Vrahnas ("Vrahnas Decl."), Dkt. 6-1, ¶¶ 4–5.)

On February 22, 2013, Petitioner was arrested for Second Degree Assault under New York Penal Law ("NYPL") § 120.05 and Fourth Degree Criminal Possession of a Weapon under NYPL § 265.01. (Vrahnas Decl, Dkt. 6-1, ¶ 6.) ICE was notified of Petitioner's arrest and initiated an investigation to determine whether he was subject to removal. (*See id.* ¶¶ 6–7.) At an interview with ICE officers on February 25, 2013, Petitioner confirmed that he was a citizen of El Salvador and that he had no status in the United States. (*Id.* ¶ 8.) ICE then issued a Form I-682, Notice to Appear ("NTA"), which charged Petitioner as subject to removal under 8 U.S.C. § 1182. (*Id.* ¶ 10.) ICE also issued a Form I-200, Warrant for Arrest of Alien ("2013 I-200"), and processed Petitioner for release on bond. (*Id.* ¶¶ 11–12.) Two months later, in April 2013, the criminal charges against Petitioner were dismissed. (*Id.* ¶ 13.) Two days later, ICE arrested Petitioner pursuant to the 2013 I-200, took him into custody, and released him on the previously processed bond, once posted. (*Id.* ¶ 14.)

In January 2021, ICE issued a superseding Form I-682, Notice to Appear ("2021 NTA"), charging Petitioner as subject to removal under 8 U.S.C. § 1182. (*Id.* ¶ 18.) In December 2021, before an immigration judge, Petitioner conceded to the allegations in the 2021 NTA. (*See id.*

¶ 20.) At Petitioner's next immigration court hearing, in March 2023, the Department of Homeland Security and Petitioner filed a joint motion to dismiss removal proceedings without prejudice. The immigration judge granted the motion. (*Id.* ¶¶ 21–22.)

2. <u>Petitioner's 2026 Arrest and Detention</u>

On August 4, 2026, Petitioner was driving to work with a colleague when he was stopped by ICE officers at around 2:28 p.m. (Pet., Dkt. 1, ¶ 26; Vrahnas Decl., Dkt. 6-1, ¶¶ 23–24.) At the time, the "officers were conducting an enforcement operation to locate and arrest another individual." (Vrahnas Decl., Dkt. 6-1, ¶ 23.) An ICE officer, who was also a Department of Transportation ("DOT") inspector, "observed a commercial motor vehicle" and "pulled over that vehicle for a U.S. DOT Level III inspection." (*Id.*) The officer inspected Petitioner's car, and Petitioner provided a driver's license, vehicle registration, and proof of insurance. (*Id.* ¶ 25.) According to Respondents, "during the inspection, Petitioner could not answer questions in English and became agitated." (Resp., Dkt. 6, at 2; Vrahnas Decl., Dkt. 6-1, ¶ 26.) Petitioner alleges that, while the officers were questioning him, he was on the phone with his wife and that she heard an officer tell him, "[j]ust because you don't speak English, that's a violation. You are getting arrested. That's a violation. You are not legal in this county. I'm arresting you." (Pet., Dkt. 1, ¶ 30.) Respondents do not deny or otherwise reply to this allegation. However, Respondents assert that the ICE officer conducting the DOT inspection "advised Petitioner that he will be out of service because he could not satisfy English language proficiency under 49 C.F.R. § 391.11(b)(2)."[2] (Vrahnas Decl., Dkt. 6-1, ¶ 26.)

[2] In relevant part, 49 C.F.R. § 391.11(b)(2) states that: "a person is qualified to drive a motor vehicle if he/she . . . [c]an read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records."

Respondents assert that prior to arresting Petitioner, the ICE officers "conducted database checks," which showed that Petitioner "lacked documentation permitting his lawful presence in the United States" and that "Petitioner was arrested on February 22, 2013, by Nassau County Police." (*Id.* ¶ 27.) Based on that information, "ICE officers determined that Petitioner would escape before a warrant for his arrest could be secured, and placed him under arrest pursuant to 8 U.S.C. § 1357." (Resp., Dkt. 6, at 3; Vrahnas Decl., Dkt. 6-1, ¶¶ 27–29; Form I-213, Dkt. 6-13, at 3.) The Form I-213 documenting Petitioner's arrest indicates that ICE was aware that the 2013 charges against Petitioner had been dismissed. (Form I-213, Dkt. 6-13, at 4.) According to ICE, Petitioner initially resisted the arrest, so "officers guided [him] to the ground." (Vrahnas Decl., Dkt. 6-1, ¶¶ 28–29.)

After his arrest, ICE officers transported Petitioner to 100 Federal Plaza, Central Islip, New York. (Vrahnas Decl., Dkt. 6-1, ¶ 30.) That same day, ICE issued a Form I-682 Notice to Appear ("NTA") for Petitioner. (*Id.* ¶ 32.) ICE then issued a Form I-200, Warrant for Arrest of Alien. (*Id.* ¶ 33.) Later that afternoon, ICE conducted an initial custody determination pursuant to 8 U.S.C. § 1226(a) ("Section 1226(a)"). (*See id.* ¶¶ 34–35.) "The [initial custody determination] worksheet reflects that ICE determined Petitioner had not shown he did not pose a danger to persons or property." (*Id.* ¶ 35.) The only reason provided is that Petitioner had "prior criminal charges against him." (Initial Custody Determination, Dkt. 6-17, at 1.) The worksheet does not indicate whether Petitioner posed a flight risk; the section titled "Flight Risk" was left blank. (*Id.* at 2.)

Still on August 4, 2026, Petitioner was transferred to the Nassau County Correctional Center. On August 7, 2026, Petitioner was transferred to the Metropolitan Detention Center

("MDC") in Brooklyn, New York. He remains detained there. (Vrahnas Decl., Dkt. 6-1, ¶¶ 37–39.)

**B. Procedural Background**

On August 5, 2026, the day after Petitioner was arrested, he filed this petition for a writ of habeas corpus. (Pet., Dkt. 1.) Petitioner challenges his arrest and detention on the grounds that they violate the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. (*Id.* ¶¶ 52–56.) Petitioner alleges, *inter alia*, that he "has operated a lawful landscaping business for many years," (*id.* ¶ 22), "has consistently complied with all immigration-related obligations," (*id.* ¶ 23), "possessed a valid driver's license authorizing him to operate the vehicle he was driving, and possessed all licenses and permits required to perform landscaping services at the location where he was working," (*id.* ¶ 29), and that an arresting ICE officer said, "Just because you don't speak English, that's a violation. You are getting arrested. That's a violation. You are not legal in this country. I'm arresting you," (*id.* ¶ 30).

On the day the Petition was filed, the Court issued an Order to Show Cause, which ordered Respondents: (1) by August 10, 2026, to "show cause in writing why a writ of habeas corpus should not be issued and why Petitioner should not be immediately released"; (2) not to "remov[e] Petitioner from the United States until further order of this Court"; and (3) not to "transfer[] Petitioner to a facility outside of this District or the Southern District of New York absent further order from this court." (O.S.C., Dkt. 3, at 1–2 (emphasis omitted).) Respondents sought an extension of time until August 12, 2026, to respond to the Court's Order to Show Cause, (*see* Dkt. 5), which the Court granted, (*see* 08/06/2026 Dkt. Order). Respondents filed a timely response to the Court's Order to Show Cause. (Resp., Dkt 6.) Respondents assert that the Petition should be denied because Petitioner "received an individualized custody determination[] and refused to

indicate whether he requested a bond hearing until he spoke to his lawyer and has not since requested a bond hearing." (*Id.* at 1.)

## LEGAL STANDARD

Petitioner filed his Petition pursuant to Section 2241, which authorizes a district court to grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have jurisdiction to adjudicate habeas corpus petitions challenging immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (explaining that Section 2241(c)(3) "authorize[s] any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws . . . of the United States'" (quoting 28 U.S.C. § 2241(c)(3))). A petitioner under Section 2241 "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (citing *Parke v. Raley*, 506 U.S. 20, 31 (1992); *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

## DISCUSSION

In opposing the Petition, Respondents argue that: (1) Petitioner was lawfully arrested under 8 U.S.C. § 1357(a)(2) ("Section 1357(a)(2)"); (2) Petitioner is lawfully detained because "he was given the custody determination that 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1(c)(8) require"; and (3) Petitioner's recourse is to seek a bond hearing before an immigration judge and—if the immigration judge denies bond—appeal to the Board of Immigration Appeals. (*See* Resp., Dkt. 6, at 3, 6.) Each of these arguments fails.

## I. Legality of Petitioner's Arrest and Detention

### A. Petitioner's Warrantless Arrest Was Not Lawful Under Section 1357 and Violated Due Process

Although the Respondents suggest that they had the authority to arrest Petitioner under Section 1357(a)(2), the Court finds that Petitioner's warrantless arrest was not lawful and violated due process, (*see* Resp., Dkt. 6, at 3). Section 1357(a)(2) provides ICE with limited authority to conduct warrantless arrests. "Specifically, ICE must obtain a warrant before arresting a noncitizen unless the officer 'has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest.'" *Curimilma Quille v. Blanche*, No. 26-CV-2818 (HG), 2026 WL 1453889, at *5 (E.D.N.Y. May 22, 2026) (emphasis omitted) (quoting 8 U.S.C. § 1357(a)(2)); *see also* 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained unless the person is likely to escape before a warrant can be obtained."). "Plainly, the text of [Section] 1357(a)(2) and federal regulation [8 C.F.R. § 287.8(c)(2)(ii)], require ICE to determine at the time of arrest: (1) whether the individual before them is in the United States illegally; and (2) whether the individual is likely to flee before a warrant can be obtained." *Lopez Romero v. Genalo*, No. 26-CV-6184 (AT), 2026 WL 2240720, at *2 (S.D.N.Y. Aug. 3, 2026); *see also Arizona v. United States*, 567 U.S. 387, 408 (2012) ("If no federal warrant has been issued, [] officers have more limited authority. They may arrest [a noncitizen] for being 'in the United States in violation of any [immigration] law or regulation,' for example, but only where the [noncitizen] 'is likely to escape before a warrant can be obtained.'" (quoting 8 U.S.C. § 1357(a)(2)). Because ICE failed to satisfy both requirements before arresting Petitioner, his arrest was not lawful under Section 1357(a)(2).

First, several factors weigh against finding that ICE had "reason to believe" that Petitioner was "likely to escape before a warrant [could] be obtained for his arrest" per Section 1357(a)(2).

*See Alfaro v. Mullin*, 831 F.Supp.3d 177, 183 (E.D.N.Y. 2026), *clarified on denial of reconsideration sub. nom. Sanchez Alfaro v. Mullin*, No. 26-CV-0766 (GRB), 2026 WL 1142478 (E.D.N.Y. Apr. 27, 2026). Here, "Petitioner has a documented history of lawful interaction with immigration officials." *Alfaro*, 831 F.Supp.3d at 183; (Vrahnas Decl., Dkt. 6-1, ¶¶ 8–16, 17–22). Petitioner and his wife have lived in Westbury, New York since 2001. (Pet., Dkt. 1, ¶ 20.) He has three children and two grandchildren—all of whom are American citizens. (*Id.* ¶ 21.) Petitioner has a pending I-485 under audit with USCIS. (Form I-213, Dkt. 6-13, at 4.) He has worked and paid taxes in this country for over two decades. (Pet., Dkt. 1, ¶ 22); *see also Alfaro*, 831 F.Supp.3d at 183 (explaining the petitioner has paid taxes since arriving in 2018). "No twist of logic or sophistry can transform [Petitioner] into a potential escapee." *Alfaro*, 831 F.Supp.3d at 184.[3]

Respondents nonetheless argue that "ICE officers determined that Petitioner would escape before a warrant for his arrest could be secured," based on database checks showing "Petitioner's prior criminal charges" and that "Petitioner lacked documents permitting his lawful presence in the United States." (Resp., Dkt. 6, at 3.) However, the mere fact that Petitioner is a foreign national and is in the United States without status "does not provide probable cause that the [Petitioner was] likely to flee before a warrant could be obtained." *Castañon Nava v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 843 (N.D. Ill. 2025); *see also Moreno v. Napolitano*, 213 F.Supp.3d 999, 1007

---

[3] Courts outside this Circuit have also taken a similar approach in determining whether ICE had "reason to believe" that the arrestee was "likely to escape before a warrant can be obtained." *See e.g.*, *B.D.A.A. v. Bostock*, No. 25-CV-2062 (AA), 2025 WL 3484912, at *8 (D. Or. Dec. 4, 2025) (considering Petitioner's "long-term ties to the community"); *Araujo v. United States*, 301 F.Supp.2d 1095, 1101–02 (N.D. Cal. 2004) ("[A]t the time of his arrest [plaintiff] was living with his wife and had filed an Application to Adjust Status to lawful permanent resident, hardly evincing an intention to flee."); *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F.Supp.3d 1, 31 (D.D.C. 2025) ("Courts have also made the self-evident finding that the likelihood of escape is lower when the individual has resided in the country for a lengthy period of time and has strong community ties." (collecting cases)).

(N.D. Ill. 2016) ("Nor can it be the case that, simply by being potentially removable, an alien must be deemed to be likely to evade detention by ICE. Such a reading would render the limitations on warrantless arrest created by 8 U.S.C. §§ 1226(a) and 1357(a)(2) meaningless.").

*Contreras v. United States*, 672 F.2d 307 (2d Cir. 1982) does not mandate a different interpretation of Section 1357(a)(2). In that case, the Second Circuit explained that "when the alien's deportability is clear and undisputed, that circumstance alone *may* provide a sufficient basis for an [] officer to believe that escape is likely before a warrant can be obtained." *Id.* at 309 (emphasis added). But "[t]his does not amount to a holding that in every case in which an alien is deportable an arrest can be made without a warrant." *United States v. Harrison*, 168 F.3d 483, 1999 WL 26921, at *4 (4th Cir. 1999) (per curiam) (table decision) (interpreting *Contreras*, 672 F.2d at 309). Furthermore, in *Contreras*, unlike in this case, the arrestee had "acknowledged to the arresting officers that she had entered this country illegally." 672 F.2d at 309; *compare* (Resp. Dkt. 6, at 3), *with Vasquez-Medrano v. Session*, 726 Fed. App'x 92, 93 (2d Cir. 2018) (summary order) ("Given that [Petitioner] had admitted that he was not lawfully in the United States, his warrantless arrest after that admission did not violate [Section] 1357(a)(2)."). These circumstances do not exist in this case.

Similarly, the fact that Petitioner was arrested in 2013 in and of itself does not satisfy the requirement that "[b]efore effecting a warrantless arrest, ICE officers must make a 'particularized inquiry' that the subject is likely to abscond." *Ramirez Ovando v. Noem*, 810 F.Supp.3d 1209, 1217 (D.Colo. 2025) (quoting *Moreno*, 213 F.Supp.3d at 1007–08).[4] The "mere 'review' of a RAP sheet is not tantamount to an individualized assessment of [Petitioner]'s flight risk or

[4] Indeed, ICE itself seems to have reached the opposite conclusion, as it released Petitioner on bond after the charges against him were dropped two months after his arrest. (*See* Vrahnas Decl., Dkt. 6-1, ¶¶ 13–14.)

dangerousness." *Cf. Terrero v. Tsoukaris*, No. 26-CV-0869 (NCM), 2026 WL 607917, at *3 (S.D.N.Y. Mar. 4, 2026) (quoting *Kelly v. Almodovar*, No. 26-CV-6448 (AT), 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (discussing custody determinations under 8 U.S.C. § 1226(a))). Respondents do not allege that ICE considered any factor in its determination other than Petitioner's immigration status and past (dropped) charges. (*See* Vrahnas Decl., Dkt. 6-1, ¶¶ 27–28; Form I-213, Dkt. 6-13, at 3.) Nor do Respondents explain how Petitioner's previous charges, which were dismissed more than a decade ago, (Vrahnas Decl., Dkt. 6-1, ¶ 13), support the conclusion that he was likely to escape under Section 1357(a)(2).

"Second, the government's evidence is . . . internally inconsistent." *Curimilma Quille*, 2026 WL 1453889, at *6. Central to the government's argument that Petitioner was lawfully arrested under Section 1357(a)(2) is its claim that ICE had reason to believe that Petitioner was likely to flee before a warrant could be issued. (Resp., Dkt. 6, at 3.) Yet the initial custody determination worksheet *authored by ICE* on the day of Petitioner's arrest does not indicate that Petitioner poses a flight risk. Moreover, to the extent that Respondents rely on Petitioner's alleged resistance of arrest, the initial custody worksheet makes no mention of it. (*Id.*) In fact, the ICE officer in charge of preparing Petitioner's initial custody determination left the entire relevant section blank. (Initial Custody Determination, Dkt. 6-17, at 2.) "This particular evidentiary contradiction suggests, at the very least, that reasonable minds could differ about whether Petitioner actually" posed a flight risk. "If reasonable minds could differ in that respect, it is clear that the officers did not have sufficient reason to believe that Petitioner was 'likely to escape before a warrant [could] be obtained for his arrest.'" *Curimilma Quille*, 2026 WL 1453889, at *6 (quoting Section 1357(a)(2)) (observing that "although the government's assertion [that Petitioner posed a

flight risk] is central to its [warrantless arrest] argument, there is no mention of this alleged flight attempt on the initial custody form").

Third, this Petition raises concerns previously expressed by this Court regarding "the use of pretextual and unconstitutional stops." *Parada Cruz v. Mullin*, --- F.Supp.3d ----, No. 26-CV-1110 (SJB), 2026 WL 1027441, at *1 (E.D.N.Y. Apr. 16, 2026) (citation omitted). Indeed, this Petition presents a familiar fact pattern and resembles others where the actions of ICE officers have given rise to allegations of unconstitutional racial profiling.[5] Here, Petitioner was not the target of the enforcement operation ICE was conducting that day.[6] (Vrahnas Decl., Dkt. 6-1, ¶ 23.)

[5] *See e.g., Flores v. Mullin*, No. 26-CV-1855 (GRB), 2026 WL 948298, at *3 (E.D.N.Y. Apr. 8, 2026) ("As to the arrest, petitioner asserts that ICE officers had no basis to intercept, interrogate and arrest him, alleging therefore that he was the victim of unconstitutional racial profiling."); *Garcia Lanza v. Noem*, 822 F.Supp.3d 329, 337 (E.D.N.Y. 2026) ("The fact that upon their first interaction with me, they spoke Spanish, confirmed to me that they only stopped me because I looked Latino and was walking in a predominantly Latino and Black area." (citation omitted)).

[6] ICE arrests of nontargets "ha[ve] become so commonplace in cases involving ICE enforcement efforts that such testimony must be examined carefully." *See Alfaro*, 831 F.Supp.3d at 184 n.6 (citing *Garcia Lanza,* 822 F.Supp.3d at 329 ("ICE officers targeted Garcia Lanza for arrest simply because he looked like someone else for whom the agents were purportedly searching")); *Guardado v. Maldonado*, No. 26-CV-1170 (OEM), 2026 WL 670156, at *2 (E.D.N.Y. Mar. 10, 2026) (petitioner "matched the description of [ICE's] primary target" (citation omitted)); *Acuapan v. Bondi*, No. 26-CV-0384 (OEM), 2026 WL 507889, at *1 (E.D.N.Y. Feb. 24, 2026) ("Petitioner, an individual matching the target's description . . . ."); *Castellon v. Doe*, No. 26-CV-0647 (NJC), 2026 WL 326947, at *4 (E.D.N.Y. Feb. 7, 2026) (noting that the ICE officer "fails to provide the description of the target that agents were looking for"); *Sanchez Atz v. Noem*, 823 F.Supp.3d 253, 256 (E.D.N.Y. 2026) (noting ICE officers "observed a male subject matching the physical description of the third-party target"); *Ndoye v. Joyce*, No. 25-CV-8856 (VSB), 2026 WL 306387, at *8 (S.D.N.Y. Feb. 5, 2026) (explaining that it was unclear "whether [the petitioner] was the target in question"); *R.P.L. v. Maldonado*, 814 F.Supp.3d 301, 303 (E.D.N.Y. 2025) (noting that "a records check confirmed that Petitioner was not [ICE's] original target"); *Mejia v. Joyce*, No. 25-CV-10462 (LAK), 2025 WL 3719632, at *1 (S.D.N.Y. Dec. 23, 2025) ("Mistakenly believing that Mr. Mejia was their intended target, ICE agents stopped Mr. Mejia's car and arrested him."); *see also Meza v. Francis*, No. 26-CV-2722 (NCM), 2026 WL 1734903, at *1 (E.D.N.Y. June 16, 2026) ("During the targeted enforcement action ICE officers believed, mistakenly, that petitioner was the primary target based on his 'matching . . . physical description.'" (citation omitted)); *Lopez Romero v. Genalo*, No. 26-CV-6184 (AT), 2026 WL 2240720 at *1 (S.D.N.Y. Aug. 3, 2026) ("ICE agents inside the vehicle 'showed [Petitioner] a

Petitioner complied with each request and provided ICE officers with valid driver's license, vehicle registration, and insurance. (*Id.* ¶ 25). ICE only looked him up after he struggled to answer certain questions in English. (*Id.* ¶¶ 26–27). Upon his arrest, Petitioner alleges that an ICE officer said something to the effect of, "Just because you don't speak English, that's a violation. You are getting arrested. That's a violation. You are not legal in this country. I'm arresting you." (Pet., Dkt. 1, ¶ 30.) As in other cases, Respondents have once again failed to address these allegations.[7] Alongside these facts, Respondents' silence suggests that Petitioner's arrest sits within a broader pattern of "pretextual arrests," driven by "discriminatory animus." *See Parada Cruz*, 2026 WL 1027441, at *1; *Garcia Lanza v. Noem*, 822 F.Supp.3d 329, 337–38 (E.D.N.Y. 2026). This further undermines Respondents' claim that Petitioner posed a flight risk and was legally arrested under Section 1357(a)(2).

---

photo of a person they claimed to be looking for and said that [Petitioner] looked like the person.'" (citation omitted)); *Vintimilla Rengel v. Maldonado*, No. 26-CV-4173 (OEM), 2026 WL 2071126, at *2 (E.D.N.Y. July 17, 2026) (explaining ICE "conducted an enforcement operation in Bronx, New York to arrest an unrelated noncitizen subject"); *Flores*, 2026 WL 948298, at *2 ("[P]etitioner was not the target of the operation being carried out by ICE officers that day, but 'matched the description of the targeted individual.'" (citation omitted)); *Okeke v. Maldonado*, No. 26-CV-2714 (PKC), 2026 WL 2056904, at *1 (E.D.N.Y. July 16, 2026) ("[O]fficers from Immigration and Customs Enforcement [] and United States Customs and Border Protection [] were conducting 'surveillance operations' in Brooklyn, New York, with the goal of 'locating and arresting' an individual other than Petitioner." (citation omitted)).

[7] *See Flores*, 2026 WL 948298, at *3 ("Petitioner asserts that ICE officers had no basis to intercept, interrogate and arrest him, alleging therefore that he was the victim of unconstitutional racial profiling. Respondents offer nothing in response, other than a concession by its counsel during the hearing that petitioner was not a target of ICE's operation."); *Garcia Lanza*, 822 F.Supp.3d at 337–38 ("[T]here is undisputed evidence of record that the arrest was motivated by discriminatory animus. . . . Confronted with these alarming allegations, and provided an opportunity to respond, Government counsel offered no evidence.").

Because "the government fails to demonstrate that it satisfied the requirements of Section 1357(a)(2)[,]" *Curimilma Quille*, 2026 WL 1453889, at *6, Petitioner's warrantless arrest violated Section 1357(a)(2) and its implementing regulation, 8 C.F.R. § 287.8(c)(2)(ii).

These same failures by ICE also violated Petitioner's Fifth Amendment procedural due process rights. *Id.* ("Because Section 1357(a)(2) requires a warrant for arrest unless both requirements are satisfied, the government's warrantless arrest of Petitioner violated due process.") "Courts in this Circuit have recognized that 'the Due Process Clause gives the noncitizen procedural rights in connection with the decision to deprive them of liberty.'" *Diallo v. Joyce*, 817 F. Supp. 3d 202, 208 (S.D.N.Y. 2025) (quoting *Funes v. Francis*, 810 F.Supp.3d 472, 498 (S.D.N.Y. Nov. 24, 2025)). "Relatedly, the Supreme Court has recognized that '[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.'" *Id.* (alteration in original) (quoting *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)). "Indeed, '[t]he notion of fair play animating [the Fifth] [A]mendment precludes an agency from promulgating a regulation affecting individual liberty or interest, which the rule-maker may then with impunity ignore or disregard as it sees fit." *Id.* (alterations in original) (quoting *Montilla v. I.N.S.*, 926 F.2d 162, 164 (2d Cir. 1991)).

Here, Respondents do not show that ICE had "reason to believe" Petitioner was "likely to escape" per Section 1357(a)(2) and its implementing regulation, 8 C.F.R. § 287.8(c)(2)(ii). These statutory and regulatory requirements are not mere formalities. They are necessary procedural safeguards, especially considering the "expedient" alternatives available to ICE: ICE officers can seek a Form I-200, which "allows arresting officers to issue their own warrants—a rare exception to the traditional practices in American law." *Garcia Lanza*, 822 F.Supp.3d at 332–33. In that context, failure to comply with Section 1357(a)(2) constitutes a denial of the due process required

by the Fifth Amendment. *See Curimilma Quille*, 2026 WL 1453889, at *3 ("[B]ecause . . . [Petitioner's] warrantless arrest did not meet the statutory requirements of [Section] 1357(a)(2), Petitioner's liberty was [] erroneously deprived.").

Furthermore, ICE's post-arrest issuance of an administrative warrant and NTA does not cure the illegality of Petitioner's arrest. "Using an after-the-fact warrant to justify a prior arrest is constitutionally problematic. It is also statutorily prohibited under the INA." *Parada Cruz*, 2026 WL 1027441, at *3. Per Section 1226(a), "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." "But such an arrest can only be based '[o]n a warrant issued by the Attorney General.'" *Yeleshev v. Larocco*, No. 26-CV-2294 (SJB), 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026) (alteration in original) (quoting 8 U.S.C. § 1226(a)). Section 1226(a)'s implementing regulation "limits the time in which such a warrant may be executed: '[a]t the time of the issuance of the . . . [NTA], or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest.'" *Id.* (alteration in original) (emphasis omitted) (quoting 8 C.F.R. § 1236.1(b)).

In this case, Respondents concede that Petitioner was arrested without a warrant. (*See* Resp., Dkt. 6, at 3.) Yet, Respondents point out that, after ICE officers arrested Petitioner and transported him to 100 Federal Plaza, Central Islip, New York for further processing, "ICE issued an NTA . . . . Then, on the same afternoon . . . ICE issued a form I-200 Warrant for Arrest of Alien." (Resp. Dkt. 6, at 2; Vrahnas Decl. Dkt. 6-1, ¶¶ 32–33.) In other words, Respondents openly admit that the administrative warrant and related NTA were issued *after* Petitioner's arrest. Post-arrest administrative warrants are invalid under Section 1226(a) and 8 C.F.R. § 1236.1: Issuing a post-arrest warrant and NTA does not cure ICE officers' lack of legal authority to conduct

the initial arrest. *See supra* Section I.A; *Ramirez Ovando v. Noem*, 810 F.Supp.3d 1209, 1226 (D. Colo. 2025) ("[I]ssuing *post hoc* warrants once plaintiffs had already been unlawfully arrested does nothing to cure the initial statutory violation."); *see also Gopie v. Lyons*, No. 25-CV-52229 (SJB), 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (holding that the post-arrest issuance of an administrative warrant and NTA meant that "when ICE arrested [Petitioner] they had no authority to do so").

Petitioner's unlawful arrest is, on its own, sufficient basis for granting the writ of habeas corpus. *See De La Rosa Izaguirre v. Blanche*, No. 26-CV-2911 (PKC), 2026 WL 2023200, at *14 (E.D.N.Y. July 13, 2026) (ordering release where "[r]espondents were not authorized to arrest [p]etitioner in the first place"). The Court nonetheless addresses the government's argument that ICE had the authority to detain Petitioner pursuant to Section 1226(a).

### B. Petitioner's Initial Custody Determination Was Defective Under Section 1226(a)

The government argues that Petitioner was lawfully detained because "he was given the custody determination that 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1(c)(8) require[.]" (Resp., Dkt. 6, at 6.) However, if ICE wishes to detain Petitioner pursuant to its authority under Section 1226(a), ICE must allow Petitioner the opportunity to "demonstrate to the satisfaction of the officer that [his] release would not pose a danger to property or persons, and that [] [Petitioner] is likely to appear for any future proceeding." 8 C.F.R. §§ 1236.1(c)(8), 236.1(c)(8). Although 8 U.S.C. § 1226(e) ("Section 1226(e)") provides that "[ICE]'s discretionary judgment regarding the application of this section shall not be subject to review" and that "[no] court may set aside any action or decision by [ICE] under this section regarding the detention of any [noncitizen]," Section 1226(e) "does not bar the Court from 'assess[ing] whether and how correct procedures were applied at all . . . and ultimately, whether [Petitioner]'s detention comports with due process."

*Jum-Cuz v. Venturella*, No. 26-CV-4409 (HG), 2026 WL 2254755, at *3 (E.D.N.Y. Aug. 5, 2026) (alterations in original) (quoting *Pastrana-Beltran v. Mullin*, No. 26-CV-2657, 2026 WL 1398609, at *3 (E.D.N.Y. May 19, 2026)). At its core, Section 1226(a) and its implementing regulations require ICE officers to make an individualized custody determination. *Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 492–93 (S.D.N.Y. 2025). Initial custody determinations "made under [Section] 1226(a) without any opportunity for the detainee to demonstrate his suitability for release are not lawful even if they were based on information particular to the detainee." *Terrero*, 2026 WL 607917, at *3. As noted, "the mere 'review' of a RAP sheet is not tantamount to an individualized assessment of a suspect's flight risk or dangerousness." *Id.* (quoting *Kelly*, 2025 WL 2381591, at *3.)

In Petitioner's case, "the mere 'review' of a RAP sheet" is all the process Petitioner was afforded. *Id.* On the initial custody determination worksheet, in response to the question "[h]as the individual established that he/she does not pose a danger to persons or property?," the ICE officer checked "no" and wrote in the "[d]iscussion" section below that "[s]ubject has prior criminal charges filed against him." (Initial Custody Determination, Dkt. 6-17, at 1.) As this Court and others have previously noted, such cursory review is insufficient. *See Kelly*, 2025 WL 2381591, at *3; *Terrero*, 2026 WL 607917, at * 3. Section 1226(a) and its implementing regulations require a "deliberative process," whereby Petitioner ought to have been given an opportunity to demonstrate to the officer that he did not pose a danger to others or a flight risk. *See Habib v. Maldonado*, No. 26-CV-2038 (OEM), 2026 WL 1088618, at *4 (E.D.N.Y. Apr. 22, 2026); *see also Curimilma Quille*, 2026 WL 1453889 at*4. In this case, while the determination might have been based on circumstances specific to Petitioner, there are no facts to suggest that Petitioner was given such an opportunity. As a result, Petitioner's initial custody determination

was not lawful under Section 1226(a) and its implementing regulations. *See* 8 C.F.R. §§ 1236.1(c)(8), 236.1(c)(8).

Furthermore, by not complying with the procedural requirements of Section 1226(a), Respondents denied Petitioner's Fifth Amendment procedural due process rights. *See Centeno Rochez v. Genalo*, No. 26-CV-3707 (RER), 2026 WL 1948773, at *2 (E.D.N.Y. June 6, 2026) ("Because the Court concludes that Respondents did not apply correct procedures during the purported 'individualized custody determination,' . . . it concludes that Petitioner's due process rights were violated.").[8] This provides another basis upon which to grant the requested writ. *See Cajamarca-Janza v. Soto*, No. 26-CV-3066 (HG), 2026 WL 1506777, at *5 (E.D.N.Y. May 29, 2026) (ordering release where "Petitioner was denied due process because ICE's initial custody determination was inadequate, thereby rendering his detention invalid").

## II. Remedy

Having determined that Petitioner's arrest and detention were unlawful, the Court turns now to the question of remedies. The "'typical remedy' for 'unlawful executive detention . . . is, of course, release.'" *Diallo*, 817 F. Supp. 3d at 210 (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)). The government argues that Petitioner should seek a bond hearing before an immigration judge and be forced to exhaust his administrative remedies, (Resp., Dkt. 6, at 1), but "[e]xhausting administrative remedies does nothing to cure a procedurally defective arrest." *Meza v. Francis*, No. 26-CV-2722 (RER), 2026 WL 1734903, at *3 (E.D.N.Y. June 16, 2026). Nor is Petitioner

[8] "Ordinarily, courts engage in a three-part analysis under *Mathews v. Eldridge*, 424 U.S. 319 (1976) to determine whether ICE's detention determination violates a petitioner's due process rights." *Centeno Rochez*,2026 WL 1948773, at *2 n.1 (citations omitted). However, "[g]iven the weight of authority for the proposition that errors in the initial custody determination necessarily amount to due process violations," and, considering Petitioner's unlawful arrest, "the Court finds it unnecessary to engage in that analysis in depth here." *Id.*

"required to exhaust a process that was deficient from the outset." *Gopie*, 2025 WL 3167130, at *3. The Court, therefore, orders Petitioner's release and his immediate return to his family.

## CONCLUSION

For the foregoing reasons, Geovany Flores Hernandez's petition for a writ of habeas corpus under Section 2441 is GRANTED.

Respondents are hereby ORDERED to release Geovany Flores Hernandez without electronic monitoring, including but not limited to GPS monitoring, no later than August 22, 2026, at 6:00 p.m. ET. Respondents must release Petitioner with all of his belongings that are in Respondent's possession, including but not limited to identification cards, clothing, and money. Respondents shall confirm compliance with these directives in a filing on the docket by 6:00 p.m. ET on August 24, 2026.

The Court further orders that Respondents shall not re-detain Petitioner without first moving before this Court to demonstrate compliance with all applicable regulatory, statutory, and constitutional requirements necessary to arrest and detain Petitioner. Should Respondents seek to re-detain Petitioner, they are directed to file a motion with the Court that justifies a lawful arrest. Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments) without prior notice to and authorization from the Court.

Should Petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within 30 days of a final judgment in this action, which, if Respondents do not appeal, is November 19, 2026. 28 U.S.C. § 2412(d)(1)(B).

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: August 21, 2026
Brooklyn, New York